IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY SMITH, | : | |
| Plaintiff, | : | Civil Action No. 3:14-cv-1340 |
| | : | |
| v. | : | (Judge Mariani) |
| | : | |
| THOMAS, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

Plaintiff, Jeremy Smith, an inmate currently confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated the instant action pursuant to *Bivens*.[1] (Doc. 1). The matter is presently proceeding *via* a second amended complaint (Doc. 24) wherein Plaintiff names the following Defendants: Charles Samuels; Jeffrey Thomas; Officer J. Klose; Officer J. Eck; Officer T. Stackhouse; Lieutenant Johnson; Lieutenant J. Cardonas; Lieutenant C. Johnson; Lieutenant Brand; Officer Fisher; Lieutenant Camden Scampone; Lieutenant Brandon Shirk; Lieutenant Casquilla; EMPT Potter; and R. Marr.

Presently pending before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment. (Doc. 36). Plaintiff failed to respond to the motion, and

---

[1] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens*-type action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 862 (3d Cir. 1975); *Farmer v. Carlson*, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988) (Nealon, J.).

the time for responding has now passed.[2] Therefore, in the absence of any timely response by Plaintiff, the motion is deemed ripe for resolution. For the reasons set forth below, the motion will be granted.

I.  **Motion to Dismiss Standard of Review**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those

---

[2] Rather than responding to Defendants' motion, Plaintiff filed a series of non-responsive motions, as well as an affidavit. *See* (Docs. 37, 38, 40, 43, 44, 46). The relevancy, if any, of these filings will be discussed herein.

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment

3

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Second Amended Complaint

Plaintiff lodges a series of excessive force, deliberate indifference, and conditions of confinement claims against Defendants involving the use of force against him, and the use of ambulatory and four-point restraints, at USP-Lewisburg. (Doc. 24). Plaintiff alleges that on March 10, 2014, Defendants J. Eck and J. Klose instructed him to "cuff up" for a routine cell search. (*Id.* at p. 3). During the cell search, Plaintiff was allegedly placed in a shower, and he observed Defendant T. Stackhouse escort another inmate to Plaintiff's cell. (*Id.*). Defendant Johnson allegedly ordered Plaintiff to go into his cell with his new cellmate. (*Id.* at p. 4). Plaintiff asserts that he informed Defendant Johnson that he cannot be housed with a cellmate due to his serious psychiatric issues. (*Id.*). Plaintiff asserts that Defendants Johnson and S. Eck then attempted to force Plaintiff out of the shower, despite his refusal. (*Id.*).

Plaintiff alleges that Defendant Johnson issued a false Code 203 threat against him, stating that Plaintiff threatened Defendant S. Eck, to justify placing him in ambulatory restraints. (*Id.*).

Plaintiff asserts that on March 14, 2014, Defendant J. Cardonas removed his leg shackles. (*Id.*). Once the shackles were removed, Officer Fisher allegedly grabbed Plaintiff

4

by the throat and forced him out of the cell. (*Id.* at pp. 5-6). Plaintiff alleges that Officer Fisher then sounded the alarm and later stated that Plaintiff pushed him, to justify putting him in four- point restraints. (*Id.* at p. 6).

Plaintiff asserts that on March 18, 2014, the restraints were removed. (*Id.* at pp. 6-7). Plaintiff claims that he was placed in "skin tight[,] bone tight" steel ambulatory restraints for refusing to accept a cellmate. (*Id.*). Plaintiff states that he remained in the restraints for a total of eight days, "by the authority of Warden Jeffrey Thomas." (*Id.*). As a result of being placed in the restraints, Plaintiff alleges that he suffers from "permanent skin scar[r]ing", swollen arms and wrists, wrist welts, nerve damage, and loss of feeling in his right hand. (*Id.* at pp. 5, 7). He further states that Defendant Potter had to apply ointment in order to remove the restraints. (*Id.* at p. 7).

Lastly, Plaintiff claims that Defendant Marr denied him a BP-8 Informal Resolution Form, in violation of his First Amendment rights. (*Id.* at p. 8).

For relief, Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and costs of the suit. (*Id.* at p. 11).

## III. Discussion

Defendants seek dismissal of the second amended complaint, or an entry of summary judgment, on the following grounds: (1) the official-capacity claims are barred by sovereign immunity; (2) Plaintiff failed to properly exhaust his administrative remedies prior

5

to filing suit; (3) Defendants Samuels and Thomas lack personal involvement in the alleged constitutional violations and *respondeat superior* cannot form the basis of a *Bivens* action; and, (4) any claims regarding falsified disciplinary reports are barred by the favorable termination rule in *Heck v. Humphrey*.[3] (Doc. 42). The Court finds that Defendants' argument regarding failure to exhaust administrative remedies is dispositive of the motion,[4] thus the alternative arguments need not be addressed. *See Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2010) ("exhaustion is a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time") (internal citation omitted).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing

---

[3] In *Heck v. Humphrey*, the United States Supreme Court held that where a judgment in favor of a plaintiff would necessarily implicate the invalidity of the conviction or the length of sentence, a cause of action under 42 U.S.C. § 1983 is not cognizable unless the plaintiff can show that his underlying "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477 (1994).

[4] In *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the defendants in *Spruill* properly identified their motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id.* at 223 (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003)). *See also Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances). Accordingly, the records submitted by Defendants in support of their motion to dismiss are indisputably authentic records which may be considered by this Court without converting the motion to a motion for summary judgment.

a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 92. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

The Federal Bureau of Prisons ("BOP") has an administrative remedy procedure

through which inmates can seek formal review of an issue relating to any aspect of his or her confinement. (Doc. 41, ¶ 11, citing 28 C.F.R. § 542.10, et seq.). In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. (Doc. 41, ¶ 12, citing 28 C.F.R. § 542.13). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. (Doc. 41, ¶ 13, citing 28 C.F.R. § 542.14). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. (Doc. 41, ¶ 14, citing 28 C.F.R. § 542.15(a)). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP. (Doc. 41, ¶¶ 15, 16, citing 28 C.F.R. § 542.15(a)). No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. (Doc. 41, ¶ 17, citing 28 C.F.R. § 542.15(a)). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. (Doc. 41, ¶ 18, citing 28 C.F.R. § 541.17(b)).

As stated, the BOP administrative remedy program requires a federal prisoner to first attempt to informally resolve any issues. (Doc. 41, ¶ 23). To initiate the administrative

remedy process, the inmate must request and file an Informal Resolution Attempt ("BP-8"). (*Id.*). Unit Counselors distribute and manually track administrative remedies. (*Id.* at ¶¶ 24-25). When an inmate completes an administrative remedy form, he may return it to any unit team member, and it will then be forwarded to the Unit Counselor for tracking. (*Id.* at ¶¶ 26-27). The Unit Counselor determines what department should respond to the inmate's request, and the Unit Counselor will then respond to the BP-8. (*Id.* at ¶¶ 28-29).

Counselors "make rounds" on the housing units several times each week, at which time inmates can request and be provided with administrative remedy forms. (*Id.* at ¶¶ 30-31). Additionally, other unit team members are on the housing units numerous times each week, and inmate can return completed administrative remedy forms to any unit team member. (*Id.* at ¶¶ 32-33).

Regarding Plaintiff's attempt to informally resolve any issues, a search of the log book for BP-8 forms for the time period of March 2014, through July 3, 2014 reveals that Plaintiff was provided one BP-8 form on March 6, 2014, which was recorded as Informal Resolution Attempt # 14-24, pertaining to mental health treatment. (*Id.* at ¶ 34-35). On March 6, 2014, a response to this BP-8 was provided to Plaintiff. (*Id.* at ¶ 36). As to the incidents alleged in the second amended complaint, Plaintiff failed to submit any BP-8 forms to his Unit Counselor, and thus failed to take the necessary first step to grieve these incidents. (*Id.* at ¶ 37). Plaintiff alleges that he was denied the necessary BP-8 forms

required to initiate the administrative remedy process. (Doc. 24, p. 10; Doc. 41, ¶ 38). However, the Informal Resolution log book reveals that between March 6, 2014 and May 9, 2014, Defendant Unit Counselor Marr provided Plaintiff a BP-8 form four days before the first incident alleged in the second amended complaint. (Doc. 41, ¶ 38). Moreover, Defendant Marr provided five other inmates BP-8 forms during that same time period. (*Id.*).

Regarding Plaintiff's attempt to formally resolve any issues, he failed to submit any administrative remedy requests within twenty days of the incidents alleged in the second amended complaint. In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates. (*Id.* at ¶ 20). A search of BOP records was conducted to determine whether Plaintiff exhausted the administrative process as to each of his claims. (*Id.*). This review revealed that Plaintiff "filed six administrative remedies between January 1, 2014, and November 13, 2014." (*Id.*). All six of these administrative remedies "were rejected for procedural deficiencies, and none of those requests concern the DHO decisions that are a subject of the Second Amended Complaint." (*Id.* at ¶ 22).

The first administrative remedy that Plaintiff filed was on July 3, 2014, four months after the alleged incidents in the second amended complaint, and related to a "staff complaint." (*Id.* at ¶ 21). Plaintiff clearly did not initiate the administrative remedy process within twenty days of the incidents alleged in the second amended complaint. (*Id.*).

Plaintiff thereafter submitted a "sensitive" remedy with the Northeast Regional Office on July 21, 2014, complaining of "unprofessional, inappropriate conduct or misconduct by staff." (Doc. 24, pp. 8-9). However, this remedy was rejected because it was submitted to the wrong level. (*Id.* at p. 9). Plaintiff was advised that the issue he raised was not sensitive, and he was directed to re-file his request at the appropriate level. (*Id.*). There is no evidence that Plaintiff re-filed this administrative remedy request. While it is true that several of Plaintiff's administrative remedy requests were rejected for procedural reasons, this rejection did not render the administrative review process unavailable. *See Rankine v. Folino*, 252 Fed. App'x 434 (3d Cir. 2007) (the rejection of the inmate's grievances prior to the final appeal stage, based on failure to use the exact spelling of his name as it appeared on his judgment of commitment, did not render the appeal process unavailable to him; *see also Boyd v. United States*, No. 06-1359, 2009 WL 4544693, at *5 (M.D. Pa. 2009) (finding that the rejection of plaintiff's sensitive grievance did not exempt plaintiff from complying with the exhaustion requirement).

The record in the instant case reveals that Plaintiff failed to exhaust administrative remedies as to any of the issues raised within the second amended complaint. Plaintiff has not filed either an opposing brief nor an opposing statement of material facts. Rather, Plaintiff has submitted unresponsive motions "for summary judgment or alternative relief."[5]

---

[5] In the motions "for summary judgment or alternative relief", Plaintiff erroneously states that Defendants failed to answer or otherwise respond to his complaint. *See* (Docs. 40, 44). These documents

(Docs. 40, 44). Plaintiff also submitted an affidavit wherein he implicitly admits that he did not file any administrative remedies concerning the claims in his second amended complaint, but attributes this failure to threats of retaliation by prison officials. (Doc. 46 at 1). Plaintiff contends that Defendants somehow prevented him from pursuing his administrative remedies by threatening to retaliate if he continues to pursue his administrative remedies. (*Id.*). The Court finds that this contention is wholly speculative. Plaintiff offers no evidence to support his assertion that BOP officials interfered with his ability to file administrative remedies. See (*Id.*). Since his incarceration at USP-Lewisburg, Plaintiff filed several grievances, which clearly undermines his assertion that he was afraid to seek administrative relief. Additionally, while housed at USP-Lewisburg, Plaintiff filed the instant action, which further undermines any claim that he was afraid to seek relief because of fear of retaliation.[6] Moreover, the Third Circuit Court of Appeals has explicitly rejected

---

do not address or oppose any of the arguments in Defendants' instant motion.

[6] The Court takes judicial notice of the numerous other lawsuits Plaintiff filed in this District Court during his incarceration at USP-Lewisburg. To wit, *Smith v. Shirk, et al.*, 3:12-cv-02529 (dismissed for failure to exhaust administrative remedies prior to filing suit); *Smith v. Shirk, et al.*, 3:13-cv-01486 (granting plaintiff's motion for voluntary dismissal based on failure to exhaust administrative remedies); *Smith v. Shirk, et al.*, 3:13-cv-01504 (consolidated into case number 3:13-cv-01486); *Smith v. Thomas, et al.*, 3:13-cv-01708 (dismissed on screening for failure to state a claim); *Smith v. Thomas, et al.*, 3:13-cv-02710 (granting plaintiff's motion for voluntary dismissal based on failure to exhaust administrative remedies); *Smith v. Federal Bureau of Prisons*, 3:14-cv-00183 (granting plaintiff's motion for voluntary dismissal based on failure to exhaust administrative remedies); *Smith v. Thomas, et al.*, 3:14-cv-00406 (dismissed for failure to pay the requisite filing fee or submit an application to proceed *in forma pauperis*); *Smith v. Federal Bureau of Prisons, et al.*, 3:14-cv-00434 (dismissed for failure to pay the requisite filing fee or submit an application to proceed *in forma pauperis*); *Smith v. Thomas, et al.*, 3:14-cv-00761 (granting plaintiff's motion for voluntary dismissal based on failure to exhaust administrative remedies); *Smith v. Thomas, et al.*, 3:14-cv-00762 (consolidated into case number 3:14-cv-00761); *Smith v. Federal Bureau of*

"'sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." *Pena-Ruiz v. Solorzano*, 281 Fed. App'x 110, 113 (3d Cir. 2008). *See also Lagos v. Federal Bureau of Prisons*, No. 09-297, 2010 WL 5294009, at *4 (W.D. Pa. 2010) ("Unfortunately for Plaintiff, fear of possible retaliation has not been recognized by the Third Circuit as a valid legal excuse for the failure to exhaust.").

In *Nyhuis, supra*, the Third Circuit Court of Appeals found that carving a futility exception into the PLRA would frustrate the Congressional purpose to stem the tide of prisoner lawsuits. *Nyhius*, 204 F.3d 65. In addition, the Court noted that such an exception would merely allow clever inmates to plead their way around the PLRA's exhaustion requirement. *Id.* Adopting a rule that permits prisoners to avoid the exhaustion requirement merely by claiming that they were prevented from filing a grievance would create an exception to the PLRA large enough to swallow the general rule. Based on the Third Circuit's holding that permitting such an exception would undermine Congressional purpose, this Court is bound to decline to adopt such an exception.

As stated by the Third Circuit, "it is beyond the power of this court-or any other-to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis*, 204 F.3d at 73 (quotation omitted). The Supreme

---

*Prisons*, 3:14-cv-01194 (granting plaintiff's motion for voluntary dismissal based on failure to exhaust administrative remedies); *Smith v. Samuels, et al.*, 3:14-cv-01778 (consolidated into case number 3:14-cv-01340); *Smith v. Ebbert, et al.*, 3:15-cv-00286 (pending); *Smith v. Federal Bureau of Prisons, et al.*, 3:15-cv-01013 (pending).

Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in *Booth*. Consequently, this Court is required to follow the Supreme Court's directive in *Booth* and dismiss Plaintiff's second amended complaint due to failure to exhaust his available administrative remedies. *See Quillar v. Brinkman*, 63 Fed. App'x 361, 362 (9th Cir. 2003) ("The district court correctly dismissed Quillar's action because it was clear from the face of the amended complaint that he had failed to exhaust available prison administrative remedies."); *See also Banks v. Roberts*, No. 1:06-CV-1232, 2007 WL 1574771, at *5 (M.D. Pa. 2007) (holding that while the plaintiff alleged that the defendants "obstructed" his efforts to pursue administrative remedies by refusing to provide proper forms and instructing others not to provide the necessary forms, the grievance process was available to him, and therefore, plaintiff's claim was procedurally defaulted for failure to comply with the process). Thus, the Court will grant Defendants' motion to the extent it seeks dismissal of Plaintiff's claims for failure to exhaust administrative remedies.[7]

---

[7] Defendants further contend that any claim by Plaintiff that Defendant Marr denied him the right to file an Informal Resolution Attempt must be dismissed because the inmate does not enjoy a constitutional right to prison grievance procedures. (Doc. 42, p. 16). The Court agrees. Prisoners have no constitutionally protected right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Rivera v. Pa. Dep't of Corr.*, 346 Fed. App'x 749, 751 (3d Cir. 2009) ("a prisoner has no constitutional right to a grievance procedure"). Thus, to the extent that Plaintiff alleges that Defendant Marr violated his constitutional rights, this claim is subject to dismissal. *See Pryor-El v. Kelly*, 892 F.Supp. 261, 275 (D.D.C. 1995) (because a prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with the grievance procedure is not actionable).

## IV. Federal Rule of Civil Procedure 4(m)

Federal Rule of Civil Procedure 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants C. Johnson, J. Cardonas, and Fisher have never been served in this case. *See* (Doc. 18). These Defendants were named in the original complaint filed on July 14, 2014. (Doc. 1). On August 13, 2014, summons were issued for these Defendants and provided to the United States Marshal for service. (Doc. 11). On September 23, 2014, waiver of service forms were returned unexecuted as to these Defendants. (Doc. 18). To date, Defendants C. Johnson, J. Cardonas, and Fisher have not been served in this action. As a result, they will be dismissed from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within 120 days of the date on which they were named as Defendants in this case.

## V. Leave to Amend

When a complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000). Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court has given Plaintiff multiple chances to amend his complaint. Nevertheless, Plaintiff has failed to exhaust the available administrative remedies prior to filing suit. Thus, the Court concludes that curative amendment would be a futile endeavor.

## VI. Conclusion

For the reasons set forth above, Defendants' motion to dismiss will be granted. (Doc. 36). An appropriate Order shall issue.

Date: September 30, 2015

Robert D. Mariani
United States District Judge